UNITED STATES DISTRICT COURT

Northern District of California

GARNETT A. GEBHARDT,

        Plaintiff,

  v.

STEVEN CHU, SECRETARY, UNITED STATES DEPARTMENT OF ENERGY, and, NORTHROP GRUMMAN CORPORATION,

        Defendants.
_____/

No. C 10-2807 MEJ

**ORDER RE DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES  (DKT. #10)**

## I. INTRODUCTION

Before the Court is Defendant Steven Chu's ("Defendant")[1] motion to dismiss Plaintiff Garnett Gebhardt's ("Plaintiff") complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1). (Dkt. #10.) The Court held a hearing on the matter on December 2, 2010. Based on the parties' papers and oral argument, relevant legal authority, and good cause appearing, the Court ORDERS as follows.

## II. FACTUAL BACKGROUND

**A.  Plaintiff's Allegations of Discriminatory Harassment and Retaliatory Termination**

The following factual background is taken from Plaintiff's Complaint. (Dkt. #1.)  In July 2002, Plaintiff began work in an Administrative Support position at the Department of Energy's ("DOE") Counterintelligence Office in Livermore, California, contracted through Northrop Grumman.  Defendant and Northrop Grumman were Plaintiff's joint employers.  While Northrop Grumman signed Plaintiff's paychecks, provided her employee benefits, and set her work schedule, DOE controlled numerous facets of her day-to-day employment — Plaintiff worked in DOE

---

[1] Defendant Northrop Grumman Corporation does not join in Defendant's motion.

facilities, had a DOE email address, and was managed by Steve Miniear, a Senior Counterintelligence Officer and Federal Employee under whom Plaintiff directly worked.

Plaintiff alleges that she was significantly older than the other employees in her immediate work group, including Miniear. Plaintiff suffers from disabilities known to Defendant and Northrop Grumman, and was regarded as disabled by Defendant. During her employment, Plaintiff suffered from severe diabetes, high blood pressure, substantial limitation to her vision during an extended period, and experienced a series of cardiac episodes and damaging strokes during her employment.

Plaintiff alleges that she was subject to discrimination at the hands of Miniear, and that females who have interacted with him are witnesses to his discriminatory treatment of her and other women. Plaintiff claims that Miniear is a bully who targeted her vulnerabilities as a woman, an older worker, and a disabled person, and that he subjected her to ongoing harassment which created a hostile working environment in which she was routinely humiliated and intimidated based upon her age, sex, and disabilities.

Plaintiff alleges that this harassment occurred nearly every time she interacted with Miniear, and she offers the following as examples of that harassment. Miniear would, on occasion, provide her with conflicting directions on how to complete job tasks, and upon completion of such tasks, Miniear would verbally abuse her, calling her an idiot or screaming in close proximity to her face and making intimidating threats. Miniear would ask Plaintiff to conduct demeaning tasks clearly outside of her job responsibilities, such as cleaning his carpets or office windows. Miniear would openly scream at Plaintiff within plain sight or within earshot of other employees, humiliating her to the point that she found herself apologizing to others in the workplace for his conduct.

Over the years, as the symptoms of Plaintiff's disabilities worsened, Miniear displayed an increasing amount of discriminatory animus towards her. Any discrepancy caused by the difficulties related to Plaintiff's disabilities would result in Miniear suggesting that Plaintiff quit if she could not handle the stress, screaming statements at her such as "what is wrong with you?" and telling her she was "such a disappointment." Plaintiff maintains that other employees within the DOE and at Northrop Grumman knew of Miniear's harassment of her, and that her Northrop Grumman

supervisor Ed Crawford was within earshot during an incident in August 2008 where Miniear screamed at Plaintiff. Plaintiff avers that Crawford was acutely aware of Miniear's harassment of her. Plaintiff claims that though Miniear consistently intimidated and harassed her, he did not treat male, younger, or non-disabled workers in this manner.

Specific to her claim that she was discriminated against based upon her disability, Plaintiff alleges the following. In March 2004, Plaintiff was diagnosed with diabetes, suffered severe vision impairment as a result, and required six weeks of medical leave. Upon her return from medical leave, Plaintiff explained her condition to Miniear, and that it might affect her ability to think clearly, which may cause errors in her work unless provided with clear written instructions. Miniear failed to comply with this as well as Plaintiff's other requested accommodations.

Plaintiff maintains that a 2007 DOE audit, which contained an interview with Plaintiff, revealed Miniear's mistreatment of female employees. Based upon the findings of this audit, Miniear was counseled about his harassment of Plaintiff by the DOE on more than one occasion. Plaintiff alleges that the harassment continued unabated until her termination. As a result of this continuous harassment, Plaintiff avers, she suffers Post Traumatic Stress Disorder.

In January and again in March 2008, Plaintiff suffered two minor strokes as a result of very high blood pressure. Plaintiff claims that the high blood pressure was exacerbated by the stress of the ongoing harassment. In August 2008, Plaintiff discussed her disabilities and need for accommodations with Northrop Grumman officials Crawford and Page Holland, a human resources official, who informed her that they would accommodate her and would either remove Miniear from his post or possibly reassign Plaintiff to another Northrop Grumman office in San Jose, California. Plaintiff avers, however, that no official at Defendant ever provided her reasonable accommodations.

Plaintiff alleges that she complained of Miniear's discriminatory harassment as early as February 2003 to officials at Northrop Grumman and Defendant, including Crawford and Holland, and that no official took effective corrective action. In August 2008, Holland provided Plaintiff with information regarding short-term disability leave, and Plaintiff alleges that Holland also registered

3

an internal Equal Employment Opportunity ("EEO") Complaint on her behalf. Holland informed Plaintiff that the DOE had registered Plaintiff's complaint concerning Miniear and was investigating it. In making her complaint to Holland, Plaintiff advised her and Northrop Grumman about the two strokes she had suffered as a result of her high blood pressure, which were exacerbated by the hostile working environment.

In mid-August 2008, Plaintiff spoke with Jean Gallina, a counselor for Northrop Grumman's Employee Assistance Program ("EAP"), on the advice of Holland. Plaintiff advised Gallina of Miniear's workplace harassment and, as a result of the conversation, Gallina advised Plaintiff to take 2-4 weeks off of work and that she should not return to work until the problem with Miniear was rectified. Plaintiff alleges that on August 25, 2008, Miniear learned that Plaintiff would be taking time off on Gallina's recommendation, and that the leave was based on her complaints of his treatment of her. After consulting with her medical doctor, Plaintiff's disability leave was extended until December 2008 based on the concern for her health and the severe stress Miniear's treatment caused her.

On December 29, 2008, Holland informed Plaintiff that she would be terminated, effective January 16, 2009. Northrop Grumman claimed that the termination was based on a workforce reduction. Plaintiff alleges that similarly situated administrative employees who did not complain of discrimination were not terminated.

**B.     Plaintiff's Allegations Regarding Exhaustion of Her Administrative Remedies**

Plaintiff alleges that she appropriately exhausted her administrative remedies as to Northrop Grumman.[2] Plaintiff claims that she filed a complaint against Northrop Grumman through the U.S. Department of Labor Office of Federal Contract Compliance Programs, alleging discrimination, harassment, denied accommodations, and retaliation, and alleges that the complaint was simultaneously filed with the Equal Employment Opportunity Commission ("EEOC"), effective March 20, 2009. However, Plaintiff does not attach either alleged complaint to her present

---

[2] Because Northrop Grumman does not join in Defendant's motion to dismiss, the Court shall not discuss whether Plaintiff exhausted her administrative remedies as to Northrop Grumman.

4

complaint, nor does she allege that a paper complaint exists.

As to Defendant, Plaintiff avers that in 2008 and previous to that, she complained to DOE officials, including but not limited to Anita Martin, regarding Miniear's discriminatory harassment. Plaintiff alleges that Martin informed her that her EEO harassment complaint was being investigated by the DOE. Plaintiff alleges that on February 5, 2009, she asked Holland who would be the appropriate DOE official to contact in order to formalize an EEO complaint against DOE involving her retaliatory and discriminatory termination and failure to accommodate claims, which she sought to add to her pending disability, age, and sex discrimination and harassment complaints. Holland advised Plaintiff to contact a DOE Human Relations Specialist, Myron Alston. Plaintiff contacted Alston multiple times prior to and on February 6, 2009. Alston returned Plaintiff's calls on February 9, 2009 and allegedly told her that she did not have to file a new EEO complaint against the DOE because she already had a complaint pending with the DOE, regarding which witnesses were being interviewed. Plaintiff indicated that she wanted her termination to be encompassed within the complaint. Plaintiff spoke with Alston again on May 1 and May 6, 2009.

On May 26, 2009, Plaintiff's counsel, Bryan Schwartz, spoke with Alston and learned that the DOE was still investigating Plaintiff's complaint. That same day, and again on the following day, Schwartz sent emails to Alston requesting information on the status of Plaintiff's pending complaint as well as a copy of the complaint. On July 7, 2009, Schwartz contacted both Alston and Kathleen Vagt, a Northrop Grumman attorney, seeking an update on Plaintiff's EEO complaint. On September 21, 2009, Reesha Trznadel of the DOE indicated to Schwartz that the DOE planned to take the position that Plaintiff had never properly filed an administrative complaint against it. Plaintiff alleges, without conceding to the DOE's position, that after seeking the EEOC's intervention on the issue, she re-filed her EEO complaint with the DOE, relating back to February 5, 2009, and the complaint was formalized November 30, 2009. On May 28, 2010, the DOE's Office of Civil Rights informed Plaintiff's counsel that her formal complaint of discrimination had been dismissed and provided her with a right to sue letter.

Plaintiff initiated the instant action on June 25, 2010. (Dkt. #1.) On October 1, 2010,

Defendant filed its motion to dismiss for failure to exhaust administrative remedies.  (Dkt. #10.) Plaintiff filed her opposition on October 28, 2010 (Dkt. #18), and on November 4, 2010, Defendant filed a reply (Dkt. #21).

## IV.  DISCUSSION

In its motion, Defendant argues that Plaintiff's complaint must be dismissed pursuant to Rule 12(b)(1) because she cannot present sufficient evidence to demonstrate that she timely exhausted her administrative remedies.  (Def.'s Mot. 2:5-9, Dkt. #10.)  Specifically, Defendant contends that Plaintiff "mistakenly believed that a management inquiry conducted by labor relations personnel was the necessary [EEO] investigation."  *Id.* at 3:4-6.  Defendant maintains that, upon discovering her mistake, Plaintiff ignored instructions to initiate EEO proceedings.  *Id.* at 3:6-7.  Defendant states that a labor relations inquiry is fundamentally different from an EEO investigation, and that Plaintiff's attempt to substitute one for the other has resulted in a failure to timely exhaust her administrative remedies.  *Id.* at 3:9-12.

In response, Plaintiff argues that exhaustion of administrative remedies does not raise jurisdictional issues, and thus that Defendant's motion is not appropriate as a Rule 12(b)(1) motion; Plaintiff argues that it should be considered a motion to dismiss pursuant to Rule 12(b)(6).  (Pl.'s Opp'n 1:6-10, Dkt. #18.)  Plaintiff maintains that even if Defendant's jurisdictional motion were proper, it must be denied because Plaintiff appropriately exhausted her administrative remedies, or at least attempted to do so through her timely communications with officials of Defendant.  *Id.* at 1:11-13.  Plaintiff further argues that she was led to believe by officials of Defendant that Defendant was investigating her claims and that she was not informed in a timely manner that she needed to raise her claims to a different official.  *Id.* at 1:15-17.  Plaintiff contends that even if the Court finds that she failed to exhaust her administrative remedies, the doctrines of equitable estoppel and/or equitable tolling should apply based upon Defendant's "apparently deliberate failure to notify her and [her] counsel that it did not consider her attempts to exhaust adequate, until long after her deadline to exhaust had passed."  *Id.* at 1:18-21.  Further, Plaintiff argues that she should be permitted the opportunity to conduct discovery as to jurisdictional issues if the Court finds that

Defendant has raised a jurisdictional concern. *Id.* at 1:26-2:2. Alternatively, Plaintiff contends that Defendant's motion should be dismissed on the basis that it is untimely. *Id.* at 1:24-25.

## A.     Whether Defendant's Motion Should be Dismissed as Untimely

As it may be dispositive, the Court shall first address Plaintiff's argument that Defendant's motion must be dismissed as untimely. Plaintiff contends that she stipulated to late filing, but that Defendant filed one full week beyond the agreed-upon time. (Pl.'s Opp'n 24:15-17, Dkt. #18.)

There is recent authority in this district for courts to disregard late-filed papers. *Benham v. Aurora Loan Services*, 2010 WL 532685, at *1 (N.D. Cal. 2010). However, while Defendant failed to file his motion within the stipulated time, it does not appear that Defendant's filing is untimely. Rule 12(b) mandates that a motion to dismiss for lack of personal jurisdiction must be brought prior to pleading if a responsive pleading is allowed. It does not, however, state that the motion must be filed prior to the time the responsive pleading is due. Either party may challenge subject matter jurisdiction at any time, even for the first time on appeal. *See Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541 (1986). Accordingly, the Court shall consider Defendant's motion to dismiss.

## B.     Legal Standard

Rule 12(b)(1) provides an avenue to challenge lack of subject-matter jurisdiction. "A motion to dismiss for lack of subject matter jurisdiction may either attack the allegations of the complaint or may be made as a 'speaking motion' attacking the existence of subject matter jurisdiction in fact." *Thornhill Pub. Co., Inc. v. General Tel. & Electronics Corp.*, 594 F.2d 730, 733 (9th Cir. 1979). Where, as here, the challenger attacks the existence of subject matter jurisdiction in fact, the court need not accept as true the allegations in the plaintiff's complaint. *Id.* (internal citations omitted). The district court may rely on extrinsic evidence and resolve factual disputes in determining whether the plaintiff has met her burden of proving the existence of subject matter jurisdiction. *Id.* (internal citations omitted).

## C.     Application to the Case at Bar

Defendant asserts that Plaintiff's claims must be dismissed as untimely. (Def.'s Mot. 3:2,

7

Dkt. #10.) In support of this argument, Defendant contends that the Court need not accept the allegations in Plaintiff's complaint as true, and may look to extrinsic evidence in determining whether there is a lack of subject matter jurisdiction to support Plaintiff's claims. *Id.* at 3:9-15.

Plaintiff responds by arguing that "Defendant's motion does not raise a jurisdictional question, and as such, the Court cannot consider information outside the four corners of the complaint." (Pl.'s Opp'n 8:5-7, Dkt. #18.) Plaintiff contends that because the motion does not concern a jurisdictional matter, Defendant inappropriately relies on evidence presented outside the four corners of the complaint. *Id.* at 1:3-5. Plaintiff maintains that the Court should treat the motion to dismiss as a Rule 12(b)(6) motion, and argues that the Court should only consider the allegations in her complaint, and must accept them as true. *Id.* at 11:1-6.

In its reply, Defendant contends that its motion is properly before the Court and that substantial compliance with the presentment of discrimination complaints is a jurisdictional prerequisite. (Def.'s Reply 2:8-12, Dkt. #21.)

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16 ("Title VII"), provides federal employees the exclusive remedy by which to allege workplace discrimination. *Kraus v. Presidio Trust Facilities Div./Residential Mgmt. Branch*, 572 F.3d 1039, 1043 (9th Cir. 2009). Title VII "provides that all personnel actions affecting federal employees and applicants for federal employment shall be made free from any discrimination based on race, color, religion, sex, or national origin, and establishes an administrative and judicial enforcement system." *Id.* (internal quotations and citations omitted). The key to Title VII is that, prior to filing a civil suit alleging discrimination, the complainant must seek relief with the agency that allegedly discriminated against her. *Id.* The statute itself does not require that the complainant exhaust her administrative remedies; however, EEOC regulations require that "[a]ggrieved persons . . . must consult a Counselor prior to filing a complaint in order to try to informally resolve the matter . . . [and] must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory . . . ." *Id.*; 29 C.F.R. § 1614.105.

Defendant argues that 29 CFR § 1614.105 mandates that if Plaintiff failed to timely exhaust

her administrative remedies, which Defendant maintains she did, her federal action must be dismissed. (Def.'s Mot. 5:21-26, 7:6-16, Dkt. #10.) Plaintiff, however, asserts that the 45-day time limit is subject to waiver, estoppel, and equitable tolling, and that under the proper standard of review, her claims cannot be dismissed as she alleged timely exhaustion in her complaint. (Pl.'s Opp'n 10:19-25, Dkt. #18.)

While failure to initiate contact with an EEO Counselor within 45 days is grounds for dismissal of an EEOC complaint, that time limit is "subject to waiver, estoppel and equitable tolling." 29 CFR §§ 1614.107(a)(2); 1614.604(c). The Ninth Circuit has consistently held that compliance with section 1614.105 is not a jurisdictional pre-requisite, but rather, a statute of limitations that may be tolled or which defendants may be estopped from asserting as a defense. *Kraus*, 572 F.3d at 1043; *Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1176 (9th Cir. 2000). However, failure to comply with the exhaustion requirement of section 1614.105 will be fatal to a discrimination complaint in federal court if the complainant fails to allege waiver, estoppel, or equitable tolling. *Kraus*, 572 F.3d at 1043.

Accordingly, Plaintiff must show that she contacted an EEO Counselor within 45 days of a discriminatory act, or, to avoid the bar from suit for failure to contact an EEO Counselor within 45 days, Plaintiff must allege facts to show that there was waiver, estoppel, or equitable tolling of her claims.

1. Plaintiff's Argument that She Did, in Fact, Properly Exhaust

Plaintiff contends that she exhausted her administrative remedies when she exhibited an intent to begin the EEO process in her communications with officials at DOE. (Pl.'s Opp'n 12:8-10, Dkt. #18.) Plaintiff argues that, under relevant Ninth Circuit authority, even though she technically did not have contacts with Defendant's "EEO Counselor," she sufficiently exhausted her administrative remedies. *Id.* at 12:11-15.

In response, Defendant contends that Plaintiff has failed to present sufficient facts from which the Court can determine that it can exercise jurisdiction. (Def.'s Reply 2:18-21, Dkt. #21.) Specifically, Defendant asserts that Plaintiff presented no evidence to justify her argument that she

9

1  actually partook in counseling or filed a complaint and took part in an EEO investigation about the
2  subjects on which she seeks to litigate. *Id.* at 2:24-28. Defendant argues that Plaintiff's complaint
3  must be dismissed for failure to meet her burden of demonstrating jurisdictional facts. *Id.* at 3:1-2.

4        In *Kraus*, 572 F.3d at 1044, the Ninth Circuit, citing an EEOC Management Directive,
5  announced that "a complainant may satisfy the criterion of EEO Counselor contact by initiating
6  contact with any agency official logically connected with the EEO process, even if that official is not
7  an EEO Counselor, and by exhibiting an intent to begin the EEO process." While generally this
8  Directive applies to EEO non-Counselor officials within the agency in question, "contact with
9  certain agency officials who are not EEO personnel has been held sufficient to satisfy the
10 regulation's 'contact with a Counselor' requirement, provided they are found to be 'logically
11 connected to the EEO process' within the agency." *Id.* at 1044-45 (citing *Duke v. Slater*, EEOC
12 Dec. 01A02129, 2000 WL 732027, at *1 (E.E.O.C. May 22, 2000) (finding that a letter sent to the
13 Regional Director of the Department of Transportation's Office of Civil Rights qualified as initiating
14 contact and finding intent based on the letter sent seeking counseling on adding claims to a
15 complaint)).

16       Plaintiff contends that her contacts with Martin and Alston, in which she informed them that
17 she wished to lodge EEO complaints, exhibit her intent to begin the EEO process. (Pl.'s Opp'n
18 13:21-27, Dkt. #18.) Defendant, however, notes that Plaintiff does not state when she allegedly
19 communicated with DOE officials on the basis of her claims that she was discriminated against
20 based upon her age, sex, or disability. (Def.'s Reply 4:4-6, Dkt. #4.) In its motion, Defendant states
21 that there is "no evidence plaintiff sought an EEO counselor or to pursue a claim against DOE on or
22 before February 20, 2009 [45 days after her termination was effective]." (Def.'s Mot. 7:10-12, Dkt.
23 #10.)

24       Defendant's assertion appears untrue. Plaintiff alleges that the initial contact with DOE
25 officials occurred in 2007, when she complained of Miniear in an audit. (Compl. ¶ 24.) However,
26 the actual audit is not in evidence, and Plaintiff does not argue that she believed she was seeking
27 counseling or that she intended to begin the EEO process at that time. Accordingly, the alleged
28

10

harassment prior to that time does not appear actionable; Plaintiff must show she made complaints to an individual logically connected with the EEO process within 45 days of a discrete act of harassment or discrimination. *Kraus*, 572 F.3d at 1044-45. Plaintiff alleges that she complained to Holland and Crawford in August 2008 regarding her need for accommodations based on her recent strokes in January and March 2008. (Compl. ¶¶ 29-30.) Even assuming that Holland or Crawford were logically connected with the EEO process, these conversations did not occur 45 days following any discriminatory incident complained of by Plaintiff.

Next, Plaintiff alleges that "[i]n 2008 and previously, [she] complained to DOE EEO officials, including but not limited to Anita Martin, regarding discrimination and harassment by [Miniear]." *Id.* at ¶ 42. In her opposition, Plaintiff argues that when she complained to Martin (on some unknown date) in 2008, she was informed that her EEO harassment complaint was being investigated. (Pl.'s Opp'n 11:24-27, Dkt. #18.) Thus far on the timeline, there is no discrete act which precedes by 45 days a complaint to some type of official.

Regarding the alleged retaliatory and discriminatory termination, Plaintiff's allegations amount to this: she took time off of work on the advice of Gallina, beginning in mid-August 2008, Miniear allegedly learned of her leave (stemming out of his treatment of her) on August 25, 2008[3], and on December 29, 2008, Plaintiff was informed that her termination would be effective January 16, 2009. *Id.* at ¶¶ 35-37. Plaintiff attests that she contacted Holland on February 5, 2009, less than 45 days following the notification that she would be terminated, allegedly seeking to file an EEO complaint against Defendant involving her retaliatory and discriminatory termination, and her denied accommodations. (Gebhardt Decl. ¶ 7, Dkt. #20.) Holland instructed Plaintiff to contact Alston, whom Plaintiff alleges she believed was an EEO Official with the DOE. *Id.* at ¶ 8. When they finally spoke on February 9, 2009, Plaintiff attests that Alston informed her that she did not need to file a new complaint with the DOE regarding her discriminatory treatment because she already had a complaint pending. *Id.* at ¶ 9. This fact is in dispute. In his declaration, Alston states

---

[3] To be clear, it appears that Plaintiff is attempting to connect her termination to Miniear's alleged knowledge of her leave.

11

that he informed Plaintiff of his title "Employee and Labor Relations Specialist," and when she asked him to send her the complaint she had filed, he told her to contact her employer, Northrop Grumman, because they had done the inquiry. (Alston Decl. ¶ 6, Dkt. #11.) The following day, Plaintiff emailed Alston informing him that she wished to amend her complaint. *Id.* at ¶ 9. Alston attests that he never responded to the email because "there was no request for counseling, no indication Plaintiff wanted to file an additional complaint against the DOE and no indication in the email that plaintiff was seeking to exhaust her EEO administrative remedies." *Id.* at ¶ 10. The email, titled "DOE Investigation" reads:

> In your ongoing [DOE] investigation on Steve Min[ ]iear, I would like my complaint to reflect that a discriminatory/retaliatory layoff (of which I was notified 12/29) has taken place since the original complaint was filed. If you are unable to do this I wish to amend my complaint.
>
> Please let me know when the complaint has been amended, or provide the forms required to make the amendment myself.

(Schwartz Decl., Ex. 4, Dkt. #19.)

As discussed, Plaintiff must show that she exhibited an intent to begin the EEO process by initiating contact with a person logically connected with the process, within 45 days of some discriminatory activity. *Kraus*, 572 F.3d at 1044-45. It appears that Plaintiff did timely exhibit her intent to begin some complaint process, possibly the EEO process, in her contact with Holland and then Alston. Ignoring for the moment the fact that Plaintiff herself never used the phrase "EEO" in her documented conversations with DOE officials outside of her complaint in this matter, the question becomes whether either individual is an agency official logically connected with the EEO process. Holland works in the Human Resources division at Northrop Grumman, and thus is not an agency official. (Compl. ¶ 25.) In response to Plaintiff's inquiry regarding the appropriate DOE official to contact to formalize an EEO complaint, Holland indicated that Plaintiff should contact Alston, a DOE Human Relations Specialist (Alston states that his title is "Employee and Labor Relations Specialist"). (*Id.* at ¶ 43; Alston Decl. ¶ 6, Dkt. #11.) Alston, thus, is an agency official. The Court must now determine whether he is "logically connected with the EEO Process." *Kraus*, 572 F.3d at 1044.

*Kraus* discusses several EEOC cases in which non-EEO Counselors were found to be agency officials logically connected with the process. *Id.* at 1045. In *Duke v. Slater*, 2000 WL 732027, at *1, the Regional Director of the Department of Transportation's Office of Civil Rights was found logically connected to the EEO process. In each of the subsequent cases discussed, the agency official contacted had "EEO" in their title. *See Stanley v. Ashcroft*, EEOC Dec. 01A31053, 2004 WL 321206, at *3 (E.E.O.C. Feb.12, 2004) ("EEO Officer); *Hardy v. Danzig*, EEOC Dec. 01981978, 1999 WL 91396, at *1 (E.E.O.C. Feb.12, 1999) ("Deputy EEO Officer"); *Waldrup v. Brownlee*, EEOC Dec. 01A43725, 2005 WL 123294, at *3 (E.E.O.C. Jan.14, 2005) ("EEO Specialist"); *Clevenger v. Danzig*, EEOC Dec. 01985794, 2000 WL 270449, at *2 (E.E.O.C. Feb.29, 2000) ("former Deputy EEO Director"). Based on this authority, it does not appear that Alston can be considered an agency official logically connected with the process. While the EEOC and the Ninth Circuit have sanctioned contact with officials actually employed by, or with the phrase "EEO" in their title, Alston is neither. Thus, to survive Defendant's motion to dismiss, Plaintiff must allege facts which indicate that Defendant is either estopped from arguing that Plaintiff failed to timely exhaust, or that the time to file was tolled until she actually initiated the EEO process in October 2009. *Kraus*, 572 F.3d at 1043; Simmons Decl., Ex. 1, Dkt. #12.

2. <u>Whether Defendant is Estopped From Arguing That Plaintiff Failed to Timely Exhaust</u>

Plaintiff contends that, even if the Court were to find that she failed to timely exhaust her administrative remedies, her interactions with Martin and Alston are sufficient to overcome Defendant's argument that she failed to properly exhaust her administrative remedies. (Pl.'s Opp'n 16:17-20, Dkt. #18.) Plaintiff alleges that she complained to Martin in 2008 regarding discrimination and harassment by Miniear. (Compl. ¶ 42.) Plaintiff appears to allege that Martin informed her that her EEO complaint was being investigated by the DOE. *Id.* Plaintiff alleges that on February 5, 2009, less than 45 days following the notification that she would be terminated, she contacted Holland and asked who the appropriate DOE official would be to contact in order to formalize her pending EEO complaint and to add to it the allegations of retaliatory and

13

discriminatory harassment. *Id.* at ¶ 43. Holland advised Plaintiff to contact Alston, which she alleges she did, prior to and on February 6, 2009. *Id.* Alston did not return her call until February 9, but apologized and told Plaintiff she did not need to file a new complaint regarding the retaliatory and discriminatory termination as she already had a complaint pending. *Id.* at ¶ 44. Alston indicated to Plaintiff's counsel on May 26, 2009 that the DOE had been investigating her EEO complaint. *Id.* at ¶ 47. However, according to Alston, the investigation was initiated by DOE management and was completely unrelated to any EEO Complaint. (Alston Decl. ¶ 5, Dkt. #11.)

In his emails to Alston, Plaintiff's counsel referenced her DOE and EEOC complaints. (Schwartz Decl., Exs. 1-3, Dkt. #19.) On September 22, 2009, Schwartz sent an email to DOE personnel stating that the DOE informed him that Plaintiff had to file an informal EEO complaint with it, and that he intended his email to be a restatement of the complaint originally filed February 9, 2009, and multiple times prior. *Id.* at Ex. 4. On September 22, 2009, Trznadel, on behalf of DOE, sent Schwartz an email stating that "[g]iven the lack of any actual EEO complaint filed with the Agency, it was reasonable that the Agency, including Mr. Alston, would assume that any talk of an 'EEO Complaint' would be about one that your client had filed against [Northrop Grumman], her employer." *Id.* at Ex. 4. The email continues to explain that Alston never would have understood that Schwartz or Plaintiff was referencing an EEO complaint, and recommends that Plaintiff file a 29 CFR § 1614.105 complaint. *Id.* Plaintiff's counsel responded by referencing the emails and contacts with Alston, which he believes tolled the filing requirement. *Id.* Plaintiff then contacted the EEOC, and on October 28, 2009, sought to re-file the complaint she believed was already pending. *Id.* Plaintiff's internal complaint was dismissed on May 28, 2010, granting her the right to sue in federal court. *Id.* at ¶ 51.

"Equitable estoppel focuses primarily on the actions taken by the defendant in preventing a plaintiff from filing suit . . . ." *Santa Maria*, 202 F.3d at 1176. Factors to consider in determining whether equitable estoppel applies are: "(1) the plaintiff's actual and reasonable reliance on the defendant's conduct or representations[;] (2) evidence of improper purpose on the part of the defendant, or of the defendant's actual or constructive knowledge of the deceptive nature of its

14

conduct[;] and (3) the extent to which the purposes of the limitations period have been satisfied." *Id.* "[E]quitable estoppel comes into play if the defendant takes active steps to prevent the plaintiff from suing in time, as by promising not to plead the statute of limitations.  Equitable estoppel in the limitations setting is sometimes called fraudulent concealment." *Id.* at 1076-77 (citing *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450-51 (7th Cir. 1990)).

Here, Plaintiff argues that she relied upon Defendant's representations that her internal EEO complaint had already been filed and that she did not need to file a new complaint, and further argues that she was misled because her indications that she wanted to amend her complaint were accepted without response or redirection.  (Pl.'s Opp'n 18:20-23, Dkt. #18.)  Plaintiff maintains that, absent the above, and had there been any instruction, she would have immediately filed an EEO complaint with the appropriate official.  *Id.* at 18:24-27.  Plaintiff asserts that Alston knew she wished to file an EEO complaint, knew that she believed him to be the appropriate person with whom to do this, and did nothing to correct her belief.  *Id.* at 19:12-17.  Plaintiff contends that because Defendant, through Alston, was timely aware of her desire to pursue her EEO claims, and because DOE admits that it conducted an internal inquiry regarding the conduct of which Plaintiff complains, that Defendant was not prejudiced in any way by her failure to timely exhaust.  *Id.* at 19:26-20:3.  Plaintiff maintains that the purpose of the limitation and exhaustion requirement was fulfilled because Defendant had ample and timely notice of Plaintiff's protests, and Plaintiff diligently pursued her claims.  *Id.* at 20:14-17.

In response, Defendant argues asserts that Plaintiff has not presented facts sufficient to establish the applicability of either tolling or estoppel.  (Def.'s Reply 3:3-5, Dkt. #21.)  Specifically, Defendant contends that Plaintiff's arguments are based on statements made by Alston more than 45 days after the final alleged act of discrimination and retaliation.  *Id.* at 10:7-9.

It does not appear that Defendant's actions rose to the level of fraudulent concealment or even an improper purpose, as contemplated in the case law cited above.  Alston attests that he did not glean from Plaintiff's email that she wished to file an EEO complaint.  (Alston Decl. ¶ 10, Dkt. #11.)  As the email reveals, Plaintiff did not mention an EEO complaint in that correspondence.

Plaintiff's counsel was the individual who introduced the phrase "EEO" into the conversation, in his May 19, 2009 email to Holland. (Schwartz Decl., Ex. 7, Dkt. #19.) Therefore, as discussed by Trznadel in her correspondence with Plaintiff's counsel, it is possible that the agency and Alston would assume that talks of a complaint were in reference to the internal investigation Northrop Grumman was conducting. (Schwartz Decl., Ex. 4, Dkt. #19.) Further, as Plaintiff has failed to allege timely exhaustion, and Defendant's motion attacks subject matter jurisdiction in fact, the Court need not accept the allegations in Plaintiff's complaint as true. *Thornhill Pub. Co., Inc.*, 594 F.2d at 733. Accordingly, there is no evidence which indicates that Defendant had an improper purpose to prevent Plaintiff from timely filing, that Defendant knew its conduct was deceptive, or that Defendant fraudulently concealed information regarding the filing requirements. Thus, the Court finds that Defendant is not estopped from arguing that Plaintiff failed to timely exhaust her administrative remedies.

### 3. Tolling

Plaintiff also contends that the timely filing deadline should be tolled. (Pl.'s Opp'n 20:18-19, Dkt. #18.) Plaintiff argues that tolling of the statute of limitations is appropriate because she actively pursued her judicial remedies but filed a "defective" complaint based upon Defendant's instruction that her complaint was adequately filed. *Id.* at 20:20-23.

Federal courts apply the equitable tolling doctrine sparingly. *Irwin v. Dept. of Veterans Affairs*, 498 U.S. 89, 96 (1990). The United States Supreme Court has allowed tolling of the applicable statute of limitations "where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Id.* Filing of a "defective pleading" contemplates filing a complaint in the wrong court. *Irwin*, 498 U.S. at fn.3; *Valenzuela v. Kraft, Inc.*, 801 F.2d 1170, 1174-75 (9th Cir. 1986).

Here, it is clear that the only complaint "filed" by Plaintiff was an internal complaint with Northrop Grumman, and that the DOE "complaint" was an internal DOE investigation conducted at the request of Northrop Grumman. (Alston Decl. ¶ 4, Dkt. #11.) The Court can find no instance in

16

which an oral complaint or even a complaint filed internally with an agency was considered a defective pleading for tolling purposes. Accordingly, the timely filing deadline cannot be tolled based on the filing of any defective pleading.

Plaintiff contends that the issue is "notice," i.e. that she did not receive notice that Defendant considered her internal filing defective or that she had to file with a different official in order to ensure exhaustion of her administrative remedies. (Pl.'s Opp'n 20:27-21:3, Dkt. #18.) Where a plaintiff has not received proper notice, the statute of limitations may be tolled. *Gates v. Georgia-Pacific Corp.*, 492 F.2d 292, 293 (9th Cir. 1974) (where EEOC failed to inform the plaintiff that she had the right to sue in district court, equitable tolling was appropriate.) However, this situation is unlike the one Plaintiff seeks to rely upon in *Gates*, where the EEOC actually failed to send the plaintiff a notice-of-right-to-sue letter. *Id.* The instant matter also differs from *Drose v. USPS*, 85 MSPR 98 (2000), another case relied upon by Plaintiff to establish that she did not have proper notice. In *Drose*, an agency official informed the plaintiff, upon his inquiry, that he did not have appeal rights, when he in fact did, thus tolling the thirty day time limit for an appeal. *Id.* at 103. However, the "statute of limitations in some situations may be tolled if the defendant has affirmatively sought to mislead the charging party." *Villasenor v. Lockheed Aircraft Corp.*, 640 F.2d 207, 208 (9th Cir. 1981) (the court would have equitably tolled the statute of limitations on the plaintiff's claim if he could present any evidence, such as an affidavit stating who had advised him not to proceed with his claim). In this case, it is not apparent that Defendant affirmatively sought to mislead Plaintiff. Nonetheless, the February 10, 2009 email sent by Plaintiff to Alston requires further discussion. The email, titled "DOE Investigation" reads:

> In your ongoing [DOE] investigation on Steve Min[ ]iear, I would like my complaint to reflect that a discriminatory/retaliatory layoff (of which I was notified 12/29) has taken place since the original complaint was filed. If you are unable to do this I wish to amend my complaint.
>
> Please let me know when the complaint has been amended, or provide the forms required to make the amendment myself.

(Schwartz Decl., Ex. 4, Dkt. #19.) In his declaration, Alston states that he never responded to the email because "[t]here was no request for counseling, no indication Plaintiff wanted to file an

17

additional complaint against the DOE and no indication in the email that Plaintiff was seeking to exhaust her EEO administrative remedies." (Alston Decl. ¶ 10, Dkt. #11.)  While it does not appear that Alston affirmatively sought to mislead Plaintiff, "[e]quitable tolling may be applied if, despite all due diligence, a plaintiff is unable to obtain vital information bearing on the existence of [her] claim." *Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1178 (9th Cir. 2002).  Furthermore, "equitable tolling does not depend on any wrongful conduct by the defendant to prevent the plaintiff from suing.  Instead it focuses on whether there was excusable delay by the plaintiff." *Id.*  Had Alston notified Plaintiff that only an internal Northrop Grumman complaint was pending, Plaintiff attests that she would have immediately filed a complaint with the appropriate EEO official at the DOE. (Gebhardt Decl. ¶ 19, Dkt. #20.)  Plaintiff declares that she relied on Alston's previous statements that she did not need to file any additional complaint, and when Alston accepted her email stating that she was seeking to amend her existing complaint, without response or redirection, she believed that the necessary complaint had already been filed.  *Id.* at ¶ 18.  The email is plain that Plaintiff wished to amend a complaint she believed she had filed which was being investigated by the DOE. It specifically requested that Alston take action and Plaintiff interpreted Alston's failure to respond to mean that she did not have to pursue further action at that point to amend her complaint.

In *Irwin*, the Court noted that it had "generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights." *Irwin*, 498 U.S. at 96.  That language refers to a case in which the Court found tolling inappropriate because the plaintiff had been warned three times of the timely filing deadline, yet still failed to meet it. *Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 150-51 (1984).  However, this case is quite different from that situation.  Plaintiff believed that she had done everything necessary in order to file a complaint with the DOE.  She was never apprised of the fact that she needed to contact another individual, despite the fact that she specifically told Alston she wanted to amend an existing complaint and allegedly asked Holland who the appropriate DOE EEO official was to contact to file an EEO complaint.

The Court thus finds that Plaintiff has actively pursued her judicial remedies such that her

18

delay in filing was excusable and tolling of the statute of limitations is appropriate. *Irwin*, 498 U.S. at 96. Plaintiff believed her complaint was being handled, and when she did not hear anything from the DOE, she contact Alston on May 1, 2009, to discuss the status of her pending complaint. (Gebhardt Decl. ¶ 14, Dkt. #20.) Alston directed her to discuss her complaint with Northrop Grumman, as Plaintiff was considered a federal contractor and, at that point, she sought out legal counsel to assist in pursuing her complaint. (*Id.* at ¶ 15; Schwartz Decl., Ex. 1, Dkt. #19.) Schwartz attests that both he and Plaintiff were consistently told that an EEO investigation was proceeding, and that they were not informed until too late that the DOE did not consider Plaintiff to have filed an internal complaint. (Schwartz Decl. ¶ 27, Dkt. #19.) As discussed, Schwartz consistently referred to Plaintiff's EEO complaint in his email communications with Defendant and was never corrected or directed to an appropriate official. Though this does not rise to the level of fraudulent concealment or affirmative misleading of Plaintiff and her counsel, DOE officials should have corrected Plaintiff's assumption that she followed the required procedures. They did not.

Based on the foregoing, the Court finds that Plaintiff's diligent pursuit of her legal rights tolled the statute of limitations until she filed her EEOC complaint in October 2009. (*See* Simmons Decl., Ex. 1, Dkt. #12.) Accordingly, the Court DENIES Defendant's motion to dismiss.

## IV.   CONCLUSION

Based on the foregoing, the Court DENIES Defendant's motion to dismiss Plaintiff's complaint for failure to exhaust her administrative remedies, as the timely filing deadline was equitably tolled.

**IT IS SO ORDERED.**

Dated: December 16, 2010

Maria-Elena James
Chief United States Magistrate Judge